Robert Wayne SMITH, Appellant,

v.

Vernon HOUSEWRIGHT, Arkansas Department of Correction, Appellee.

No. 81–1059.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1981.
Decided Dec. 23, 1981.

690

Samuel Turner, Jr., West Memphis, Ark., argued, for appellant Robert Wayne Smith.

Steve Clark, Atty. Gen. by Dennis R. Molock, Deputy Atty. Gen., argued, Little Rock, Ark., for appellee.

Before STEPHENSON, Circuit Judge, GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

In September 1976, Robert Wayne Smith was convicted of aggravated robbery and kidnapping. Smith here appeals the denial of his petition, attacking the state court conviction, for a writ of habeas corpus. We affirm the district court's [1] denial of relief.

The facts, as briefly stated by the Arkansas Supreme Court and reiterated by the court below, are as follows:

> Here the victim was a West Memphis motel clerk. She testified that a man, with his face covered, took money from her at gun point, blindfolded her and then drove her to Memphis [Tennessee] where he took her to a motel room and forced her to commit a perverted sex act. She testified further that to her knowledge no one .else was with the robber. She was able to identify the gun, car and some of the clothing. Appellant admitted these items were his property. Appellant's signature was on the room registration form where the kidnap victim was held for approximately one hour. Appellant, when apprehended, had in his possession the car and a key to the room where the victim was held. The stolen money was found near the car. Even disregarding appellant's confession, which was properly admitted, the evidence cannot be said to be substantially insufficient.

A jury found Smith guilty as charged. Sentences were imposed of forty years on the aggravated robbery charge and five years on the kidnapping charge. The convictions were affirmed by the Arkansas Supreme Court. A petition for a writ of certiorari was denied by the United States Supreme Court.

On May 7, 1978, Smith filed a petition for a writ of habeas corpus in the United States

---

1. The Honorable Henry Woods, United States District Judge, Eastern District of Arkansas.

District Court for the Eastern District of Arkansas. An evidentiary hearing was held before United States Magistrate Henry Jones. Smith testified along with four police officers of the West Memphis, Arkansas, Police Department. Robert Bates, an ex-employee of the West Memphis Police Department was the only subpoenaed witness who could not be present.

The record was held open for the additional testimony from Bates. The deposition of Bates was eventually obtained by telephone, with Bates appearing at the office of the clerk of the United States District Court in Greenville, South Carolina.

After this deposition was filed, the magistrate made his findings and conclusions. He found that three of Smith's four contentions in his petition for a writ of habeas corpus were without merit, but that Smith's contention that "[t]he use of his involuntary confession at trial was a violation of the Fifth, Sixth and Fourteenth Amendments to the Constitution" was well taken and that the writ of habeas corpus should be granted unless the state retried the petitioner within ninety days.

The magistrate's finding that Smith's confession was involuntary was based on the testimony of ex-West Memphis Police Department Detective Robert Bates. During Bates's telephone deposition, he recanted his previously sworn testimony, given at the suppression hearing in the trial court. Bates's new testimony, contrary to that given at the suppression hearing, was that Smith had asked to see a lawyer before signing a waiver of rights form and that one of the interrogating officers had told Smith that "he could see a lawyer but he needed to sign that waiver of rights form first and [he] would get him a lawyer." Bates also testified that Smith was complaining of stomach pains and asked to see a doctor and that he was told that he would be allowed to see a doctor when he gave the information that the police needed.

In explanation of why he had testified differently during the state court proceedings, Bates said he had had trouble before with the West Memphis Police Department

regarding testimony he had given in connection with an ex-policeman. He said that the morning after he testified regarding the ex-policeman he was told by one of his superior officers that the Chief was upset at him because of the way he had testified. Bates said that he testified the way he did at Smith's state court hearing because he was in fear of losing his job if he did otherwise.

During the habeas hearing, the testimony of all four of the other officers was consistent in asserting that Smith had voluntarily and knowingly signed the waiver of rights form, that Smith did not request to see an attorney, and that he only mentioned needing a doctor after the questioning and in the context of needing to be under a doctor's care for treatment of mental problems. The four officers also testified that Smith was never threatened, intimidated, or coerced in any manner by anyone as an inducement to make statements.

The magistrate credited Bates's testimony over that of the four other officers, finding and concluding:

In most cases, both sides have an interest in protecting their version of the story and the testimony is usually shadowed by this interest. The officers, except for Mr. Bates, are all still employed by the West Memphis Police Department. The Court does not believe, and certainly does not wish to imply, that all police officers would willingly perjure themselves to protect their interests. It cannot be ignored, however, that one officer who is no longer employed with the police department, is willing to recant his testimony, and to subject himself to possible charges of perjury. Furthermore, the state made no showing in its cross-examination of Bates that he harbored any hostility or prejudice against the police department and made no showing of any motivation for changing his testimony. Therefore, the Court credits Mr. Bates' testimony over that of the other officers, and finds that petitioner requested an attorney before he signed the waiver and at least once more during the question-

ing. These requests were denied and the petitioner was induced to sign the waiver form and to make the statements introduced at trial.

The Attorney General of Arkansas filed objections to the magistrate's recommendations and, in addition, filed a statement of necessity in accordance with federal and local rules. The Attorney General urged that, inasmuch as the state might be required to retry a case now five years old, the credibility of Bates should be tested in an actual hearing. The state also claimed that Bates's recanting of his prior testimony had come as a total surprise and that evidence had since been discovered to explain Bates's change in testimony. The request for an additional evidentiary hearing was granted and the hearing was held on December 11, 1980.

Smith testified at the hearing. Bates also testified and, in accordance with his deposition, stated that Smith had requested a lawyer and a doctor. Bates testified that his prior testimony to the contrary, in the state court proceeding, had been false. He also testified that he had resigned on request from the West Memphis Police Department on February 11, 1979, for tipping off a suspected bootlegger and gambler prior to a raid by the police.

The state then called the West Memphis Chief of Police to testify regarding the termination of Bates's position as a police officer. The Chief of Police stated that at some point he had been informed that Bates was taking bribes to allow certain illegal activities to continue. This allegation was investigated by members of the police department. By tapping Bates's telephone, the investigators found that Bates had phoned a Napoleon Brown, a well-known bootlegger and gambler, and had warned him that police officers were on the way to his premises. When the officers arrived at Brown's premises, the place was "clean." On that same day, the Assistant Chief of Police called Bates to his office and confronted him, in the presence of three other officers, with the evidence of his call to Napoleon Brown. Bates admitted his guilt and then submitted his resignation. The three officers present when Bates was confronted with the evidence against him each corroborated the above story when they testified at the hearing on Smith's petition.

After resigning, Bates tried to be reinstated in the police department. He requested and received a hearing before the West Memphis Police Commission. However, he was not reinstated.

Seven West Memphis police officers who testified at the hearing testified, in substance, that Bates was resentful toward the West Memphis Police Department personnel. They felt that he recanted his testimony about Smith in order to "get even" for what he considered his wrongful discharge.

The principal interrogators of Smith vehemently continued to deny that Smith had ever asked for a doctor or a lawyer. They insisted that Smith's confession had been entirely voluntary.

A long-time member of the Arkansas bar, a Mr. James C. Hale, also gave testimony which was damaging to the petitioner's position. Mr. Hale testified that after Bates gave his deposition in the magistrate's hearing he sought Hale's help in getting a job with the Arkansas State Police. Hale told Bates that he could not recommend anyone who would recant his sworn testimony as Bates had done. Bates denied that he had testified in accordance with his deposition. He said, according to Hale, that "the reporter must have gotten it wrong; that's not what he said." Hale testified that Bates was bitter toward the West Memphis Police Department and he gave specific instances which demonstrated the extent of Bates's grudge.

The district court adopted the magistrate's findings and conclusions with regard to petitioner's points (1), (2), and (4). It overruled and set aside his findings in regard to point (3). The court found that Bates had recanted his prior testimony because of "animosity toward the West Memphis Police Department as a result of his forced resignation therefrom." The court also found that "[t]he confession of Robert Wayne Smith was voluntary in all respects."

Smith's arguments on this appeal may be grouped into four issues, as follows: (1) Did the district court err in finding that the state court had jurisdiction to hear evidence relating to the appellant's alleged participation in deviate sexual activity in Tennessee? Did appellant have sufficient notice that he would be called on to respond to such allegations? (2) Did the court err in finding that no denial of due process resulted from the questioning of appellant regarding prior bad acts? (3) Did the court err in holding a hearing subsequent to the magistrate's hearing in order to consider additional evidence? (4) Did the court err in holding that appellant's confession was voluntary and thus properly admitted into evidence?

## I.

Smith was charged in Arkansas state court with aggravated robbery and kidnapping. The applicable Arkansas statute defines kidnapping as follows:

(1) A person commits the offense of kidnapping if, without consent, he restrains another person so as to interfere substantially with his liberty *with the purpose of*:

. . . .

(d) inflicting physical injury upon him, or of *engaging in* sexual intercourse, *deviate sexual activity*, or sexual contact with him; . . . .

Ark.Stat.Ann. § 41–1702 (emphasis added). Smith argues on appeal that the Arkansas state court in which he was originally tried had no jurisdiction to hear evidence relating to the "deviate sexual activity" with which he was charged because this activity occurred in Tennessee, outside its jurisdiction.

However, Smith was not charged in Arkansas with a substantive offense of deviate sexual activity. Evidence of this activity was admitted in order to prove a requisite element of the kidnapping charge which had been filed against him.

■■■ Under the law of Arkansas, "if the requisite elements of the crime are committed in different jurisdictions, any state in which an essential part of the crime is committed may take jurisdiction." *Gardner*

*v. State,* 263 Ark. 739, 748, 569 S.W.2d 74, 78 (1978), *cert. denied,* 440 U.S. 911, 99 S.Ct. 1224, 59 L.Ed.2d 460 (1979) (citation omitted). The rule is the same in deciding issues of federal jurisdiction in federal courts. *See Ford v. United States,* 273 U.S. 593, 606–07, 47 S.Ct. 531, 535, 71 L.Ed. 793 (1927); *United States v. Busic,* 592 F.2d 13, 20 (2d Cir. 1978); *Leonard v. United States,* 500 F.2d 673, 674 (5th Cir. 1974).

Smith also argues that because he relied on the felony information which charged him with crimes committed in Crittenden County, Arkansas, he had no notice that he would be required to respond to allegations of acts committed in Tennessee. The felony information which charged Smith with kidnapping sets out the charge that Smith forced his victim to participate in a deviate sexual activity. Smith had given a statement to the West Memphis Police Department indicating that he had taken the victim to a motel in Memphis, Tennessee, where they performed such an act. Smith and his counsel were thus on notice that evidence of the portion of the criminal episode which took place in Tennessee would be used against him.

## II.

■■■ Smith next contends that he was denied due process when he was forced to testify regarding prior bad acts. On cross-examination of Smith by the state, reference was made to a statement formerly given to West Memphis police officers by Smith and included in the trial evidence as part of plaintiff's exhibit no. 13. The statement was, "I feel like I can't stop taking things."

During Smith's cross-examination, the following colloquy occurred:

Q: You told the officers in one of the statements there that you couldn't quit taking things; you didn't know what was wrong with you, is that what you want to say now: That you don't know what is wrong with you, can't keep from taking things?

A: No, that was in my childhood.

Q: It was what?

A: Back in my childhood.

Q: Well, I don't even know what you are talking about now. Why don't you tell me?

The defense attorney objected:

We object to that your Honor: What happened in his childhood. It is immaterial.

Q: (By the prosecutor) Did you have some kind of a problem taking things?

The defense attorney again objected and the objection was overruled. The state's attorney resumed questioning:

Q: Did you have a problem?

A: No sir; not in my adolescence.

Q: I beg your pardon.

A: Not in my adolescent years, no sir.

Q: Have you ever had a problem with taking things?

A: No, sir.

Q: Never. Okay. Is this the first time you have ever held anybody up, robbed anybody?

A: I never robbed anybody.

Smith argues that the above "testimony regarding alleged bad acts" was highly prejudicial and too remote to be probative in terms of the crime charged. However, no evidence of prior bad acts was elicited in the above testimony. The prosecutor simply inquired about a statement previously made to the police by the witness. There was certainly no denial of due process effected by that inquiry.

### III.

Smith contends that it was improper for the district court to hold a hearing subsequent to the magistrate's hearing because the state did not comply with the Rules of the United States District Court for the Eastern and Western District of Arkansas in pursuing the second hearing. The thrust of Smith's allegation is that the state did not file its objections to the magistrate's proposed findings and conclusions and its statement of necessity within the ten-day time limitation for doing so.

 The relevant rule requires the filing within "ten days after being served with a copy" of the proposed findings or recommendations. Rules of the United States District Court for the Eastern and Western Districts of Arkansas, Rule 23 VIII(C). The state was served with its copy on October 9, 1980. Therefore, October 19 was presumably the last day for the state to file objections. However, October 19, 1980, fell on a Sunday. Therefore, the period of filing for the state ran until the end of October 20. See Fed.R.Civ.P. 6(a). The state filed the relevant documents on October 20, within the time period allowed. Smith's other objections to the district court's decision to hold an additional hearing are without merit. It is obvious from the outcome that important evidence had come to light concerning Bates's recantation of his prior testimony. The district court had wide discretion in determining the extent to which it should review the magistrate's findings. See Bruno v. Hamilton, 521 F.2d 114, 116 (8th Cir. 1975). It exercised that discretion within permissible limits.

### IV.

█ Finally, there is the contention that Smith's confession was not voluntary and that it was thus improperly admitted into evidence. We agree with the district court that the state produced ample proof of Bates's motivation for recanting his prior testimony. We also agree that this proof leads to the conclusion that Bates's recantation should not be relied upon in view of the other evidence. The district court wrote:

We are convinced that the State has produced ample proof of motivation for the recantation of Bates. In fairness to Magistrate Jones, it should be pointed out that he did not hear this testimony, nor did he observe Bates testifying in person from the witness stand. We were not impressed with either his demeanor or the explanations given for his actions. He is an admitted perjurer and a man who would jeopardize the safety of his fellow officers by tipping off the subject

of a police raid. Only a short while ago he was making a recantation of sorts to Deputy Prosecutor Hale with respect to his deposition. We cannot give credence to the testimony of such an individual, in this habeas corpus proceeding, standing as it does in direct conflict with his own sworn testimony at a prior hearing and the testimony of four other police officers. We are also impressed with the time lag in his coming forward. It was not until he was discharged by the West Memphis Police Department and had developed great animosity at the failure of his superiors to reinstate him that he came forward with his recantation three and one-half years after his original testimony.

The district court did not err in denying habeas corpus relief to the petitioner. We therefore affirm the judgment of the district court.