Kenneth Norman RHODES, Appellant,

v.

William FOSTER, Lincoln Correctional Center, Appellee.

No. 81–2370.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1982.

Decided July 1, 1982.

Thomas C. Sattler, Lincoln, Neb., for appellant.

Paul L. Douglas, Atty. Gen. of Neb., Lynne R. Fritz, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before McMILLIAN, Circuit Judge, MARKEY,* Judge, and ARNOLD, Circuit Judge.

McMILLIAN, Circuit Judge.

Kenneth N. Rhodes appeals from the district court's [1] denial of his petition for a writ of habeas corpus. For reversal Rhodes argues that (1) there was insufficient evidence presented at his trial to support a finding of guilt beyond a reasonable doubt and (2) remarks made by the prosecutor were prejudicial and deprived Rhodes of his right to a fair trial. On the basis of the opinion of the district court, we affirm its denial of Rhodes' petition. *See* 8th Cir. Rule 14.

Rhodes was convicted in 1977 by a Nebraska jury of sexual assault in the first degree and sodomy. He was sentenced to a term of seven to ten years on each count to be served concurrently.[2]

We adopt the Nebraska Supreme Court's explanation of the facts from its opinion affirming Rhodes' conviction.

The prosecuting witness was a married woman, 20 years of age, who was 6 months pregnant at the time of the offense. The defendant and two companions, Laurens Albert and Duane Ives, had spent a part of the afternoon and evening of July 4, 1977, drinking. While driving around in an automobile owned by Ives, they came upon the prosecuting witness and offered to take her home. Shortly before that they had given her a ride to the Regional Center west of Hastings, Nebraska. Instead of taking her home, they drove out into the country north and east of town and parked on a country road. The prosecuting witness left the automobile and started walking or running down the road. The defendant followed her, pushed her into the ditch, and threatened to harm her unborn baby if she did not submit. When she tried to get away the defendant choked her and told her that he "would really hurt the baby" if she tried that again. The defendant forced her to attempt an act of fellatio and then had intercourse with her. The prosecuting witness was then taken back to town.

When she arrived back at her home her clothing was wet, her hair "was a mess," and "she was all messed up." She immediately told her husband what had happened. The police were called and then she was taken to the hospital where she was examined by a physician. *State v. Rhodes*, 201 Neb. 576, 270 N.W.2d 920, 921–22 (1978).

Rhodes is currently serving his term of imprisonment in the Lincoln Correctional Center. This appeal followed, the district court's denial of Rhodes' petition for habeas corpus relief.

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

2. Rhodes' sentence was modified slightly by the Nebraska Supreme Court on appeal.

The standard of review in habeas corpus cases is set out by the district court in its memorandum opinion:

Habeas corpus relief is warranted based on insufficiency of the evidence, if the record shows that no rational trier of fact could have found proof beyond a reasonable doubt of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 324 [99 S.Ct. 2781, 2791, 61 L.Ed.2d 560] (1979). In applying the test, the facts in the record are to be viewed in the light most favorable to the prosecution. *Id.*[3]

After reviewing the evidence, the district court found that a rational trier of fact could find that Rhodes' guilt was established beyond a reasonable doubt. We agree.

Rhodes first argues that the state failed to corroborate Luckey's accusation, as required under Nebraska law.[4] The doctor who examined Luckey about an hour after the incident testified at Rhodes' trial. He stated that he found no bruises or injuries when he treated Luckey, nor did he find any live sperm in her vagina. The doctor also testified that nonliving sperm could remain where it was found for up to twenty-four hours, and living sperm could remain there for a few hours. Luckey apparently did not give a definite answer when asked at trial if she and her husband had had sexual relations during the time from the morning of July 3, 1977 to the time of the incident. It was therefore never established that the sperm was not from her husband. In addition, police investigators did not find a shoe Luckey claimed was missing or evidence of a scuffle when they searched the next morning, and Luckey could not locate the place where she said she had been molested.

Rhodes also argues that there was no evidence presented which proved lack of Luckey's consent.[5] In support of his argument Rhodes cites testimony from Albert and Ives that Luckey voluntarily entered the car twice; that she stayed with Rhodes, Albert and Ives for a while in the car during the several stops it made; that she left the car voluntarily; and that during the alleged attack they did not hear any screams. Rhodes also states that there was no evidence that Luckey resisted the alleged sexual assault.

Rhodes next argues that there was no firm corroboration of penetration. There were no physical signs of attack, the sperm specimens could not be linked directly to Rhodes, and testimony revealed that Rhodes was intoxicated and that his drinking had adversely affected his motor control. The physician who treated Luckey testified at trial that excessive drinking could negatively affect sexual performance.

Rhodes last argues that the fact that Luckey complained to her husband when she got home should not be given great weight because, given the circumstances, her explanation for her absence was self-serving.

The district court compared the physical evidence and the prosecutrix' testimony with each element of the two charges.[6] The district court reasoned that a "rational trier of fact could easily conclude that there was adequate evidence to show the elements of both sexual abuse and sodomy."[7]

3. *Rhodes v. Foster*, No. CV 80–203, (D.Neb., Nov. 25, 1981).

4. *See State v. Fisher*, 190 Neb. 742, 212 N.W.2d 568, 571 (1973). (Case involving charges of rape and assault with intent to commit rape.)

5. *See State v. Pierce*, 196 Neb. 762, 246 N.W.2d 210, 212 (1976).

6. Neb.Rev.Stat. § 28–408.03 (Reissue 1975), which was in effect at the time of the offense and petitioner's conviction, defines first degree sexual assault in pertinent part as follows: "(1)

A person shall be guilty of sexual assault in the first degree when such person subjects another person to sexual penetration and (a) overcomes the victim by force, threat of force, express or implied, coercion, or deception,..."

The offense of sodomy was then defined at Neb.Rev.Stat. § 28–919 (Reissue 1975) in pertinent part as carnal copulation with a human being in an opening of the body excluding sexual parts.

7. Memorandum opinion at 2.

■ Our careful review of the record has demonstrated that the evidence supports the district court's analysis. The district court found evidence of penetration and force and found that Luckey's testimony was corroborated by her physical condition and appearance. We agree with the district court's conclusion that there was adequate evidence to satisfy a rational trier of fact.

Rhodes' second contention is that the prosecutor's remarks were prejudicial and operated to deprive him of a fair trial. The prosecutor asked Luckey's husband at trial what Luckey had said when she arrived home. The defense objected[8] but the objection was overruled. Luckey's husband testified that Luckey told him she had been "molested and stuff." The defense again objected; however, this objection was sustained. The prosecutor then made statements to the effect that Nebraska statutes required corroboration and that he was merely attempting to do what was required by statute. Rhodes argues that these remarks, made before the jury, gave Luckey's husband's testimony undue credibility, especially because the rest of the evidence against him was weak.

■ The district court rejected Rhodes' argument on the merits after noting that irregularities in trial procedure are generally not to be ruled upon by federal courts in habeas corpus proceedings. *Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976). The district court correctly stated that such errors can only be challenged when they rise to the status of a constitutional violation, or when they deprive the defendant of his right to due process. There is a deprivation of due process when the challenged error is gross, conspicuously prejudicial or of such import that the trial was fatally infected. *Id.*

The district court found that the prosecutor's comments did not deprive Rhodes of a fair trial. The husband's answer to the prosecutor's question did not give details of the sexual assault, although it did go beyond acknowledging the fact of the complaint.[9] However, because no motion was made to strike the answer, the prosecutor's remarks did not add anything to the husband's testimony and other evidence supported Rhodes' conviction, the district court held that there was no merit to Rhodes' claim.

■ We believe that the district court was correct in denying Rhodes' petition on this ground also. The prosecutor's remarks concerning the statute were improper, as the state agrees,[10] however, there has been no infringement of a specific constitutional right because the entire proceeding was not detrimentally affected. *Maggitt v. Wyrick*, 533 F.2d at 385.

The decision of the district court is hereby affirmed.

---

8. The fact that the prosecutrix made a complaint within a reasonable time after the alleged assault to a person to whom such a statement would naturally be made is admissible evidence. The details of the content of the complaint are generally not admissible on direct examination. *State v. Escamilla*, 193 Neb. 503, 227 N.W.2d 852, (1975).

9. See note 8.

10. Brief of Appellee at 14.