**John Lawrence DANIELS, Appellant,**

v.

**Frank W. WOOD, Warden, Appellee.**

No. 86-5233.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1987.

Decided May 22, 1987.

Mark D. Nyvold, Minneapolis, Minn., for appellant.

Beverly J. Wolfe, Minneapolis, Minn., for appellee.

Before ARNOLD and FAGG, Circuit Judges, and WRIGHT,* Chief District Judge.

FAGG, Circuit Judge.

John Lawrence Daniels, a Minnesota prisoner convicted of first-degree and attempted murder, *see State v. Daniels*, 332 N.W.2d 172 (Minn.1983), appeals the denial of his petition for habeas corpus. *See* 28 U.S.C. § 2254. Daniels argues his trial was inconsistent with due process in three aspects—the prosecution's failure to disclose a witness statement, the prosecution's misconduct during closing argument, and the court's refusal to read to the jury during deliberation certain testimony the jurors requested to rehear. Daniels also challenges the sufficiency of the evidence to support his convictions. We affirm.

The contradictory testimony in this case suggests the following basic outline of the events immediately preceding the charged crimes. Daniels and a person known as "Hollywood" were passengers in a blue Cadillac driven by Robyn Amos. They were chasing a black Lincoln in which Michael Palmer was a passenger. When the Lincoln struck a vehicle in an intersection, Palmer jumped from the Lincoln, ran down the street, and dived through the open win-

---

* The HONORABLE SCOTT O. WRIGHT, Chief Judge, United States District Court for the West- ern District of Missouri, sitting by designation.

dow of a passing car. Palmer was pursued by Daniels and Hollywood, and shots were fired. The first shot hit and killed Alonzo Bridges, the driver of the passing car, while the succeeding shots injured Palmer. Daniels and/or Hollywood then returned to the blue Cadillac, and when that car ultimately crashed into a building, its occupants fled.

The jury during deliberations sought to review the testimony of two witnesses regarding the number and descriptions of the persons fleeing the Cadillac after it crashed and the number of car doors left open when those persons fled. Daniels asserts this testimony was crucial to his case because by his theory only Hollywood returned to the Cadillac and ultimately fled the crashed vehicle with Amos. Thus, Daniels concludes, he was denied due process when the trial court failed to reread for the jury the relevant passages of testimony.

■■ As Daniels recognizes by framing his argument as one for due process, "[i]t is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension." *Wainwright v. Goode,* 464 U.S. 78, 83, 104 S.Ct. 378, 382, 78 L.Ed.2d 187 (1983) (per curiam). An irregularity in state trial procedure rises to the status of a due process violation "when the challenged error is gross, conspicuously prejudicial or of such import that the trial was fatally infected." *Rhodes v. Foster,* 682 F.2d 711, 714 (8th Cir.1982). Daniels in fact must make a greater showing of prejudice than would be necessary to support a finding of plain error on direct appeal. *See Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977); *cf. Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) (contrasting "narrow" review of due process with broad exercise of appellate supervisory power).

■ Assuming the trial court committed error by failing to read the requested passages of testimony to the jury (and in failing to review the testimony before ruling, on the jury's request), we believe Daniels overestimates the importance of the crash of the Cadillac to his case. Daniels by his own testimony placed himself with Hollywood at Bridges' car when Bridges was shot, and there is no evidence that makes returning to the Cadillac dispositive of which of Daniels and Hollywood pulled the trigger. In addition, Palmer testified that Daniels had been the actual gunman, and no version of the events following the shootings undermines this testimony. Any error by the trial court in failing to allow the jury to review the requested testimony did not so fatally infect the entire trial that the resulting conviction violated due process.

Daniels asserts he was also denied due process when the prosecutor during closing argument stated that Daniels had a predisposition to lie and suggested that Daniels knowingly relied on questionable testimony when he called as a defense witness Donna Barrow, who initially was to have testified for the prosecution. Daniels stresses that the prosecutor's comments were not invited by improper conduct by his defense attorney. *See United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

■ The "invited response" rule, however, merely formalizes for a particular trial setting the concept that challenged statements must be viewed in context in determining whether prosecutorial misconduct amounted to prejudicial error. *Id.* at 11, 12, 105 S.Ct. at 1044–45. Unprovoked prosecutorial misconduct does not justify reversal of a conviction obtained in an otherwise fair proceeding. *Id.* at 11–12, 105 S.Ct. at 1044–45. A court considering a claim of improper prosecutorial argument must consider "the probable effect that the remarks had on the jury's ability to fairly judge the evidence." *Davis v. Wyrick,* 766 F.2d 1197, 1203 (8th Cir.1985) (citing *Young,* 470 U.S. at 12, 105 S.Ct. at 1045), *cert. denied,* —— U.S. ——, 106 S.Ct. 1209, 89 L.Ed.2d 322 (1986). Habeas relief is not available absent a reasonable probability— that is, a probability sufficient to undermine confidence in the outcome—that the result would have been different had the improper argument not been made. *Drake v. Kemp,* 762 F.2d 1449, 1458 (11th Cir.

1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986).

■ As observed by the Minnesota Supreme Court on direct appeal, the prosecutor's comments regarding Daniels' predisposition for untruthfulness relied on a permissible inference from Daniels' trial testimony, in which Daniels admitted past lies. *See Daniels,* 332 N.W.2d at 180. Defense witness Barrow, a passenger in the Bridges car, could not identify which of the men who ran up to the car did the shooting; thus, the degree of credibility attached by the jurors to Barrow's testimony likely had little effect on their verdict. Assuming the prosecutor's remarks were improper, this misconduct did not "fatally infect" Daniels' entire trial and deprive him of fundamental fairness. *See Davis,* 766 F.2d at 1203.

■ A failure by a prosecutor to disclose upon request evidence favorable to the defense violates due process if the evidence was material to guilt. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Daniels in this case challenges the prosecutor's decision to withhold a statement made to police by L'Tanya Ragland Daniels, a defense witness who at relevant times was either Daniels' girlfriend or wife. Daniels argues he would have not called Ragland to testify had he known that the prosecution on cross-examination would use Ragland's statements to police to ask about Daniels' awareness he was wanted in connection with the shootings. Thus, Daniels concludes, disclosure of the Ragland police report was material to his defense strategy.

Evidence is "material" for the purposes of *Brady* if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985); *United States v. Kraemer,* 810 F.2d 173, 178 (8th Cir.1987) (per curiam). The question here is whether there is a reasonable probability the outcome of Daniels' trial would have been different absent the implication of "consciousness of guilt" raised by the prosecutor's cross-examination of Ragland. We believe not.

■ First, Ragland denied making the statements to police, and the court, on Daniels' objection, cut off further questioning. In addition, Daniels stipulated that after the shootings he left Minnesota to avoid arrest, and Ragland independent of her statements to police testified Daniels left Sioux City, Iowa, just before arrest because he knew police had discovered his identity. Any benefit to the prosecution from its cross-examination of Ragland based on the police report was mostly cumulative, and thus a decision not to call Ragland would not have resulted in a material difference in the defense position. Daniels was not denied due process by the prosecution's failure to disclose evidence under *Brady.*

■ Finally, Daniels is entitled to habeas relief on his insufficient evidence claim only if "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). The evidence is to be viewed in the light most favorable to the prosecution. *Id.* at 319, 99 S.Ct. at 2789. Here Palmer, one of the victims, testified that Daniels was the man who shot him. Additional evidence established a motive for Daniels, recounted a prior attack by Daniels on Palmer, and identified Daniels as having had a gun in his hand earlier on the evening of the shootings. Daniels' argument that Palmer's testimony could not be believed goes to Palmer's credibility rather than to the sufficiency of the evidence, and credibility is for the jury. *See United States v. Wade,* 740 F.2d 625, 628 (8th Cir.1984). This evidence, particularly in light of Daniels' admitted presence, was adequate to support the convictions.

Finding no violations of due process, we affirm the denial of Daniels' petition for habeas corpus.