**John Byron NEWMAN, Plaintiff,**

v.

**Frank X. HOPKINS, Defendant.**

**No. 4:96CV3287.**

United States District Court,
D. Nebraska.

April 27, 1998.

John Byron Newman, Lincoln, NE, pro se.

John C. Vanderslice, Federal Public Defender's Office, Lincoln, NE, for John Byron Newman.

Kimberly A. Klein, Attorney General Office, for Frank X. Hopkins.

### MEMORANDUM AND ORDER ON AMENDED PETITION FOR HABEAS CORPUS

URBOM, Senior District Judge.

On March 26, 1998, there was filed a Report and Recommendation of United States Magistrate Judge David L. Piester that the petitioner's Amended Petition for Writ of Habeas Corpus be denied in all respects. Filing 21. Objection to that report and recommendation was made by the petitioner on April 9, 1998. The respondent moved to strike the petitioner's objection. The petitioner moved to strike the respondent's motion to strike. The respondent then moved to strike the petitioner's motion to strike. The petitioner filed a second motion to strike the respondent's motion to strike.

I must move quickly to resolve these motions, lest the giddiness of this merry-go-round becomes an addiction.

The report and recommendation of the magistrate judge was filed and copies mailed to counsel on March 26, 1998. The objection to the report and recommendation was filed and served by mail on April 9, 1998, the fourteenth day after March 26. The question is whether the objection was timely made. That depends upon the interrelatedness of three sets of rules: the Federal Rules of Civil Procedure, the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. § 636(b)(1)(C), and the Local Rules of this court (NELR).

Because this is a case filed under 28 U.S.C. § 2254, it seems sensible to begin with the Rules Governing Section 2254 Cases in the United States District Courts. They became effective February 1, 1977. Rule 8 of those rules allows a magistrate judge to be designated to submit recommendations for disposition and says that any party may serve and file written objections to the recommendations "[w]ithin ten days after being served with a copy." Title 28, U.S.C. § 636, having to do with a magistrate judge's procedures, uses the same language. No other provision of those rules or of § 636 explains how to calculate the ten-day period. The ten-day limit could be expanded beyond ten days if Rule 6 of the Federal Rules of Civil Procedure were to apply to § 2254 cases, because that rule does explain how to compute time, by not including the first day, including the last day unless it is a Saturday, a Sunday, or a legal holiday or when the court is inaccessible for the filing, and excluding Saturdays, Sundays, and legal holidays if the time prescribed is less than eleven days, and adding three days after service by mail. Whether

any of the features of Rule 6 of the Federal Rules of Civil Procedure can be employed in the computation of times for § 2254 cases is therefore critical in this case.

The only rule of the Rules Governing Section 2254 Cases in the United States District Courts that suggests when the Federal Rules of Civil Procedure are applicable is Rule 11, which says:

"The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to, petitions filed under these rules."

Rule 81(a)(2) of the Federal Rules of Civil Procedure says:

"These rules are applicable to . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions . . . ."

In *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), the court observed that, while habeas corpus proceedings are characterized as "civil," such a label is "gross and inexact." *Id.* at 293–94, 89 S.Ct. 1082. "Essentially," the court said, a habeas corpus proceedings is "unique." *Id.* at 294, 89 S.Ct. 1082. In deciding that the discovery provisions of the Federal Rules of Civil Procedure were not intended by the drafters to be extended to habeas corpus as a matter of right, the Court said:

"In considering the intended application of the new rules to habeas corpus, it is illuminating to note that in 1938 the expansion of federal habeas corpus to its present scope was only in its early stages. . . . In these circumstances it is readily understandable that, as indicated by the language and the scanty contemporary exegesis of Rule 81(a)(2) which is available, the draftsmen of the rule did not contemplate that the discovery provisions of the rules would be applicable to habeas corpus proceedings."

*Id.* at 295.

■ One of the particular reasons the Supreme Court used in deciding that the discovery rules were not applicable to habeas corpus proceedings was that their specific provisions were "ill-suited to the special problems and character" of habeas corpus proceedings. That, however, does not appear to be true with respect to the matter of computation of time. No guidance for computing time is suggested in the Rules Governing Section 2254 Cases in the United States District Courts, other than its reference to the Federal Rules of Civil Procedure, "to the extent that they are not inconsistent with these rules . . . [and] when appropriate." It appears to me that Rule 6 of the Federal Rules of Civil Procedure is not inconsistent with the Rules Governing Section 2254 Cases in United States District Courts and that it is appropriate to apply that rule to habeas corpus cases, given the absence of guidance otherwise in computing time limits.

In *Harris v. Nelson, supra,* the court in footnote 7, said:

"In fact, it is our view that the rule-making machinery [of district courts] should be invoked to formulate rules of practice with respect to federal habeas corpus and § 2255 proceedings, on a comprehensive basis and not merely one confined to discovery. The problems presented by these proceedings are materially different from those dealt with in the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure and reliance upon usage and the opaque language of Civil Rule 81(a)(2) is transparently inadequate. In our view the results of a meticulous formulation and adoption of special rules for federal habeas corpus and § 2255 proceedings would promise much benefit."

Consistent with the footnote in the *Harris* case, this court has adopted its local rules. NELR 72.4 provides:

"A party may object to a recommendation entered by a magistrate judge in a dispositive matter (i.e., excepted by 28 U.S.C. § 636(b)(1)(A) and (2)) by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order."

That local rule is not particularly helpful, because it, too, gives no guidance in how to compute the ten days or whether to exclude certain days or add days for mailing. My

sense is that practicing lawyers have, by and large, assumed that Rule 6 of the Federal Rules of Civil Procedure applies to habeas corpus cases.

Accordingly, because the history of the intent of the drafters of the Federal Rules of Civil Procedure is scanty and murky, because habeas corpus proceedings have generally been characterized as civil in nature, because to apply Rule 6 of the Federal Rules of Civil Procedure to § 2254 cases would not be inconsistent with the rules specifically designed for those cases, I find that it is appropriate to apply Rule 6 to this case.

Supportive of this result is *Smith v. Housewright*, 667 F.2d 689, 694 (8th Cir. 1981).

It follows that, upon excluding Saturdays and Sundays, the objection to the magistrate judge's report and recommendation was timely filed on the tenth day after the filing and service of the report and recommendation.

None of the motions to strike will be granted. When I deny the first motion to strike, the other motions to strike have (and never have had) any purpose.

That brings us to the substance of the objection to the report and recommendation. The analysis by the magistrate judge of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) regarding the Fourth Amendment, the proposed voice exemplar and the Fifth Amendment, the admission of evidence of other crimes and acts, the photo array and the sufficiency of the evidence is on target. The recommendation of the magistrate judge will be adopted.

IT IS ORDERED that:

1.  the Motion to Strike Objections of Petitioner to Magistrate's Report and Recommendation, filing 23, is denied;
2.  the Motion to Strike Respondent's Motion to Strike, filing 24, is denied;
3.  the Motion of Respondent to Strike Petitioner's Motion to Strike Objections of Petitioner to Magistrate's Report and Recommendation, filing 25, is denied;
4.  the Second Motion to Strike Respondent's Motion to Strike, filing 26, is denied;
5.  the Report and Recommendation of the magistrate judge, filing 21, is adopted; and
6.  the Amended Petition for Writ of Habeas Corpus, filing 10, is denied.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

March 26, 1998.

The Amended Petition for habeas corpus relief raises five claims in challenging John Newman's 1994 conviction, in the Lancaster County Nebraska District Court, of first degree sexual assault. Petitioner's first trial ended in a mistrial when the jury was unable to agree on a verdict. His second trial resulted in a conviction. He was sentenced to imprisonment for a term of 25–50 years.

On direct appeal to the Nebraska Court of Appeals, the conviction and sentence were affirmed. *State v. Newman*, 4 Neb.App. 265, 541 N.W.2d 662 (1996). Petitioner then petitioned the Nebraska Supreme Court for further review, which was granted. That court also affirmed the conviction and sentence. *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996). He then filed his petition in this court, raising the same claims he raised to the Nebraska appellate courts. Counsel agree that there is no issue of procedural default or exhaustion of state remedies.

The facts as found in the state courts are recited by the Nebraska Supreme Court's decision in this case and need not be repeated here.

Petitioner raises these claims:

Claim 1. Petitioner's conviction was the result of evidence obtained in violation of the Fourth Amendment.

Claim 2. Petitioner was denied due process of law by the trial court's refusal to allow him to demonstrate his speaking voice, without waiving his Fifth Amendment privilege of silence and subjecting him to cross-examination.

Claim 3. Petitioner was denied due process of law when the trial court overruled his objections to testimony by witnesses Russell Grady and Julie Denny.

Claim 4. Petitioner was denied due process of law when the trial court overruled his

objections to the identification testimony of the victim, the fruit of an unduly suggestive photo array.

Claim 5. Petitioner was denied due process of law in that insufficient evidence supported the verdict.

Amended Petition, filing 10. These claims must be reviewed under the new standards of 28 U.S.C. § 2254(d).[1]

### Claim 1

■ Petitioner's Fourth Amendment claim is not an adequate claim for relief in habeas corpus. The Supreme Court in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) barred habeas courts from considering Fourth Amendment claims when the state courts have provided the petitioner a full and fair opportunity to litigate such claims. Although the Eighth Circuit previously permitted a review of whether the state courts' hearings on such claims were in fact full and fair and resulted in factual findings supported by the record, that position was later changed. *Willett v. Lockhart* 37 F.3d 1265 (8th Cir.1994):

> We conclude that under *Stone* a federal habeas court considering a state prisoner's claim alleging a Fourth Amendment violation should abstain from reviewing the state court records to determine if the state's factual findings are fairly supported by the record as a whole, and we overrule *Howard v. Pung* [862 F.2d 1348 (8th Cir. 1988) ] to the extent that it requires otherwise. Rather, the proper inquiry is whether "the State has provided an *opportunity* for full and fair litigation" of the claim. *Stone*, 428 U.S. at 482, 494, 96 S.Ct. at 3046, 3052.

37 F.3d at 1270 (emphasis added). Further, The *Stone* bar applies despite a state court's error in deciding the merits of a defendant's fourth amendment claim.

*Robinson v. Clarke,* 939 F.2d 573, 575 (8th Cir.1991); quoting *Lenza v. Wyrick,* 665 F.2d 804, 808 (8th Cir.1981).

The record in this case is clear that petitioner was afforded, and took, a full and fair opportunity to litigate his Fourth Amendment claim in the state courts. Thus, to the extent that petitioner is requesting this court to review the state courts' conclusions regarding the substance of his Fourth Amendment claim, this court is barred by *Stone* from doing so.

However, petitioner also argues that the state appellate courts misapplied the harmless error doctrine after finding a Fourth Amendment violation, and relies upon *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) for the proposition that an evidentiary hearing and particularized findings are necessary to determine whether the state met its burden of showing harmlessness. Respondent argues that the first of petitioner's claims is barred by *Stone v. Powell* in its entirety.

■ The Eighth Circuit has not directly addressed the issue of whether habeas review of a state court's conclusion that a Fourth Amendment violation was harmless error is barred by *Stone v. Powell.* Neither petitioner nor respondent has briefed this issue.

The Third Circuit, in *Gilmore v. Marks,* 799 F.2d 51 (3rd Cir.1986), *cert. denied,* 479 U.S. 1041, 107 S.Ct. 903, 93 L.Ed.2d 853 (1987), thoroughly addressed this issue and concluded that the state court's finding of harmlessness was a part of the "full and fair" opportunity to litigate the underlying Fourth Amendment claim, and was thus barred by *Stone.* The court noted that in the two cases before the Supreme Court in *Stone,* one of them (Powell) involved a state court's finding that any Fourth Amendment violation was harmless, and the other (Rice) involved a

---

1. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d). This provision, part of the Anti-terrorism and Effective Death Penalty Act, became effective April 24, 1996. This case was filed July 30, 1996. No argument is made that the 1996 amendments do not govern this case.

decision that the state court's ruling on the merits of the Fourth Amendment claim was incorrect. The Supreme Court did not distinguish between the two in its discussion of the deference to be accorded state courts' rulings on Fourth Amendment claims, leading the Third circuit to conclude, "That the state appellate court in *Powell* had found the error, if any, to be harmless was, therefore, irrelevant to the Court's decision." 799 F.2d at 56. *Accord, see, Agee v. White*, 809 F.2d 1487, 1490 (11th Cir.1987) (State court's finding of harmlessness was part of "full and fair" opportunity to litigate Fourth Amendment claim and therefore *Stone*-barred); *McDaniel v. Oklahoma*, 582 F.2d 1242, 1244 (10th Cir.1978), *cert. denied*, 439 U.S. 969, 99 S.Ct. 462, 58 L.Ed.2d 429 (1978) (same).

In *Stone,* the Court found that Fourth Amendment claims were not cognizable in habeas proceedings, because the exclusionary rule was not a constitutional rule, but rather a judge-created rule of deterrence meant to prevent law enforcement officers from violating the amendment. Weighing the social costs of overturning state convictions based upon a non-constitutional doctrine, the Court concluded that where a state had provided a full and fair opportunity to a defendant to litigate his Fourth Amendment claim, the federal courts were powerless to intervene, even if they might disagree. Later, in explaining *Stone,* Justice Powell wrote:

> As many of our cases indicate, the admission of illegally seized but reliable evidence does not lead to an unjust or fundamentally unfair verdict. We have held repeatedly that such evidence ordinarily is excluded only for deterrence reasons that have no relation to the fairness of the defendant's trial. *United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Stone v. Powell,* 428 U.S., at 486–488, 96 S.Ct. 3037; *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Indeed, it has long been clear that exclusion of illegally seized but wholly reliable evidence renders verdicts less fair and just,

because it "deflects the truthfinding process and often frees the guilty." *Stone v. Powell,* 428 U.S., at 490, 96 S.Ct. 3037. *See also id.,* at 540 (WHITE, J., dissenting) (noting that often "the only consequence" of exclusion "is that unimpeachable and probative evidence is kept from the trier of fact and the truth-finding function of proceedings is substantially impaired or a trial totally aborted"). Thus, the harm suffered by respondent in this case is not the denial of a fair and reliable adjudication of his guilt, but rather the absence of a windfall.

*Kimmelman v. Morrison,* 477 U.S. 365, 395–6, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (Powell, J., Concurring).

I am confident that given this background, the Eighth Circuit would join the other circuits that have addressed the issue and conclude that *Stone* bars the habeas court from considering the state appellate courts' findings of harmlessness of a Fourth Amendment violation. Consequently, I conclude that petitioner's first claim is barred in its entirety.

### Claim 2

Petitioner argues that the state courts misapplied federal law in holding that his proposed voice exemplar would waive his Fifth Amendment privilege against self incrimination and would subject him to cross examination, and also that the trial court's ruling was not prejudicial. In addressing this issue the Nebraska Supreme Court held, "We conclude that if relevant and reliable, a voice exemplar may be offered into evidence by a criminal defendant without waiving his or her Fifth Amendment privilege against self-incrimination." *State v. Newman,* 250 Neb. at 244, 548 N.W.2d 739. The court went on, however, to hold that even though the trial court had erred in excluding the voice exemplar, the ruling was not prejudicial because, under the test the court established, the petitioner had failed to demonstrate that the exemplar would meet the "relevant and reliable" test. *Id.,* at 245, 548 N.W.2d 739.[2] Petitioner

---

**2.** Although the court used the term "irrelevant" in its conclusion, it had previously found that the evidence would have been relevant to the issue of identity. *Id.,* at 244, 548 N.W.2d 739. Its conclusion follows a discussion that an exemplar may be "relatively easy to feign," but is also

explained that "the conditions under which petitioner spoke to the victim could not be reproduced." *Id.* at 245, 548 N.W.2d 739. In any event, it is clear that the court faulted the peti-

seems to argue that the state supreme court's application of this rule to him was an unreasonable application of federal law under 28 U.S.C. 2254(d)(1). I disagree.

■ The application of a state's evidence rules to a habeas petitioner has long been viewed by the federal courts as largely unreviewable in habeas corpus actions. *See*, e.g., *Redding v. Minnesota*, 881 F.2d 575, 578 (8th Cir.1989), *cert. denied*, 493 U.S. 1089, 110 S.Ct. 1158, 107 L.Ed.2d 1061 (1990):

In a habeas corpus proceeding state evidentiary matters are reviewable only if "the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process." *Wallace v. Lockhart*, 701 F.2d 719, 724 (8th Cir.) *cert. denied*, 464 U.S. 934, 104 S.Ct. 340, 78 L.Ed.2d 308 (1983). A denial of due process occurs when the error is "gross, conspicuously prejudicial or of such import that the trial was fatally infected." *Rhodes v. Foster*, 682 F.2d 711, 714 (8th Cir.1982) (citing *Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976)). It follows that this due process standard requires a greater showing of prejudice than needed to support a finding of plain error on direct appeal. *Daniels v. Wood*, 819 F.2d 195, 197 (8th Cir.), *cert. denied*, 484 U.S. 861, 108 S.Ct. 177, 98 L.Ed.2d 131 (1987).

881 F.2d at 579. A habeas court may examine such alleged errors only if they are so egregious as to have "fatally infected the trial and rendered it fundamentally unfair." *Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir. 1996), quoting *Troupe v. Groose*, 72 F.3d 75, 76 (8th Cir.1995).

■ The Nebraska Supreme Court is the final arbiter of state law, including the Nebraska rules of evidence. Neither the rule as pronounced, nor the application of it to this petitioner, has been shown by him to meet the test above described. In fact, as that court stated, there was other identification evidence before the jury which clearly pointed to the petitioner; the use of his voice exemplar in addition to the "accent/no-accent" conflict among the other witnesses would not likely have changed the outcome of the trial in any respect. Its exclusion certainly did not render the trial "fundamentally unfair." This claim is without merit.

### Claim 3

■ The previous discussion regarding evidentiary rulings is applicable to this claim. Petitioner has argued that the use of the Nebraska evidence rules at issue, Neb.Rev. Stat. § 27–404(2) and § 27–403, were misapplied by the trial court in admitting the testimony of Russell Grady and Julie Denny. Section 27–404(2), itself, however, permits the use of such testimony as "proof of motive, *opportunity*, intent, preparation, plan, knowledge, *identity*, or absence of mistake or accident." (Emphasis added). Although the petitioner argues otherwise, it is clear that the evidence was relevant to both the perpetrator's identity[3] and his opportunity to commit the charged offense. Petitioner has not shown that its admission rendered the trial "fundamentally unfair" so as to qualify for habeas relief on this ground.

### Claim 4

Petitioner's challenge to the victim's identification testimony raises Fourteenth Amend-

---

tioner for failing to meet the "relevant and reliable" standard it established in this case.

**3.** Although petitioner argues that his identity was never at issue in the trial, the Eighth Circuit has repeatedly held that a plea of not guilty to a criminal charge automatically places all issues related to the prosecution's burden of proof, including identity, at issue. *See*, e.g., *U.S. v. Miller*, 974 F.2d 953 (8th Cir.1992):

As we explained in *United States v. Gilmore*, 730 F.2d 550, 554 (8th Cir.1984):

By pleading not guilty, the defendant put the government to its proof on all elements of the

charged crime, including intent, knowledge, and identity. The challenged testimony supports the government's position on each of these issues. The government is not required to wait until a defendant posits a particular defense asserting the lack of one of the elements of the charged crime, but may prove up their case in anticipation of such a defense. *See also*, *Estelle v. McGuire*, 502 U.S. 62, 69–70, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[T]he prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense"). 974 F.2d at 960.

ment issues. Petitioner claims that the photo array from which the victim identified his picture was unduly suggestive, and that the suggestiveness led to the victim's erroneous identification of him in court, denying him due process.

In reviewing whether a photo array was unduly suggestive, the court must determine, from the totality of the circumstances of the procedures used and the photos themselves, whether there was created a "very substantial likelihood of irreparable misidentification," *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), such that the procedure was fundamentally unfair to the defendant. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Dodd v. Nix*, 48 F.3d 1071 (8th Cir.1995); *Harris v. Wyrick*, 644 F.2d 710, 712 (8th Cir.1981). If so, then the court must also decide whether, in fact, the identification testimony at trial was reliable, in spite of the unduly suggestive identification procedures. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Graham v. Solem*, 728 F.2d 1533, 1541 (8th Cir.1984), considering

> the witness's opportunity to view the defendant at the time of the crime, the witness's degree of attention at the time of the crime, the accuracy of the witness's description prior to the identification, the level of certainty expressed by the witness when making the identification, and the length of time that has elapsed between the crime and the confrontation.

409 U.S. at 199–200, 93 S.Ct. 375.

The Nebraska Supreme Court found that the procedures used in this case regarding the photo array were not, in fact, unduly suggestive. 250 Neb. at 226–7, 548 N.W.2d 739. Although the petitioner disagrees, he has not shown that court's conclusion was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision

that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Nebraska Supreme Court's conclusion is fully supported by the record of the case and clearly follows established Supreme Court precedent.[4] I conclude, therefore, that this claim, too, is without merit.

### Claim 5

Petitioner challenges the sufficiency of the evidence supporting conviction. Applying the familiar test of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), it is clear from the record that the evidence was more than sufficient to support a guilty verdict by "any rational trier of fact." 443 U.S. at 319, 99 S.Ct. 2781. The Nebraska Supreme Court's consideration of the issue is clearly within the parameters of the precedents of the United States Supreme Court. 28 U.S.C. § 2254(d). This claim is likewise without merit.

IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Warren K. Urbom, United States Senior District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that the Amended Petition for Writ of Habeas Corpus be denied in all respects.

The parties are notified that failure to file an objection to this recommendation in accordance with the local rules of this court may be held to be a waiver of any right to appeal the district judge's adoption of this recommendation.

---

4. The Nebraska Supreme Court relied upon *State v. Gibbs*, 238 Neb. 268, 470 N.W.2d 558 (1991) and *State v. Price*, 229 Neb. 448, 427 N.W.2d 81 (1988), both of which applied the *Brathwaite* and *Biggers* analysis, albeit without citing to those cases. In those cases the Nebraska Supreme Court relied upon *State v. Swoopes*, 223 Neb. 914, 395 N.W.2d 500 (1986), overruled on other grounds, *State v. Jackson*, 225 Neb. 843, 408 N.W.2d 720 (1987), as authority for its standards in reviewing claims of unduly suggestive identification techniques. Swoopes, in turn, relied upon *Simmons v. United States, supra*.